Kyle W. Parker, ABA No. 9212124
David J. Mayberry, ABA No. 9611062
CROWELL & MORING LLP
1029 W. 3rd Avenue, Suite 402
Anchorage, Alaska 99501
Telephone:     (907) 865-2600
Facsimile:     (907) 865-2680
kparker@crowell.com
dmayberry@crowell.com

*Attorneys for Plaintiff Shell Gulf of Mexico Inc.*
*and Shell Offshore Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHELL GULF OF MEXICO INC. and SHELL OFFSHORE INC., | ) ) |
| | ) |
| Plaintiffs, | ) Case No. |
| vs. | ) |
| | ) |
| CENTER FOR BIOLOGICAL DIVERSITY, INC., REDOIL, INC., ALASKA WILDERNESS LEAGUE, NATURAL RESOURCES DEFENSE COUNCIL, INC., NORTHERN ALASKA ENVIRONMENTAL CENTER, PACIFIC ENVIRONMENT AND RESOURCES CENTER, SIERRA CLUB, THE WILDERNESS SOCIETY, OCEAN CONSERVANCY INC., OCEANA INC., DEFENDERS OF WILDLIFE, GREENPEACE, INC., NATIONAL AUDUBON SOCIETY, INC., AND WORLD WILDLIFE FUND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) **COMPLAINT FOR DECLARATORY RELIEF** (28 U.S.C. § 2201) |
| Defendants. | ) ) |

## I.     INTRODUCTION

1.     This action seeks a declaration that the United States National Oceanic and Atmospheric Administration ("NOAA"), National Marine Fisheries Service ("NMFS") properly

issued Plaintiff Shell Gulf of Mexico Inc. ("SGOMI") an Incidental Harassment Authorization ("IHA") in connection with exploration activities in the Chukchi Sea (Exhibit A) and Plaintiff Shell Offshore Inc. ("SOI" and, collectively with SGOMI, "Shell") an IHA in connection with exploration activities in the Beaufort Sea (Exhibit B).

2.      Specifically, Shell seeks a declaration that NMFS's issuances of these two IHAs are valid under and complied with (1) the Marine Mammal Protection Act of 1972, 16 U.S.C. §§ 1361-1432h ("MMPA") and its implementing regulations at 50 C.F.R. Part 216; and (2) the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4347 ("NEPA"), the Council for Environmental Quality regulations implementing NEPA at 40 C.F.R. Parts 1500-1508, and NOAA's agency procedures implementing NEPA at NAO 216-6.

3.      To be clear, Shell does not contend that a declaratory judgment action is appropriate for all government permitting approvals.  However, given the unique and extraordinary circumstances surrounding the issuance of these IHAs,[1] declaratory relief is clearly warranted.  Unlike most government approvals, these approvals were issued just two months prior to the commencement of operations that themselves last just a few months.  The seasonal nature of Shell's exploration in combination with the extensive and time-consuming permitting process renders the IHAs uniquely vulnerable to procedural litigation maneuvers to restrict Shell's ability to use them.

---

[1] The Oil Spill Response Plan approvals subject to Shell's declaratory judgment action *Shell Gulf of Mexico Inc. v. Center for Biological Diversity*, No. 3:12-cv-0048-RRB, present similar circumstances.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 2 of 28

Case 3:12-cv-00096-RRB   Document 1   Filed 05/03/12   Page 2 of 28

4.      The named Defendants have long expressed through both word and deed, the intent to prevent drilling on the Alaska Outer Continental Shelf by any means necessary, including litigation.  These particular Defendants have followed through by filing challenges to very major approval related to offshore drilling in Alaska generally, as well as those approvals specific to Shell's planned operations this summer.  Their prior statements and past practice make it a virtual certainty that they will litigate the approval of the IHAs.  Prompt review of the IHAs in this declaratory judgment action is justified and necessary in these unique circumstances to allow the Court sufficient time to make a reasoned evaluation of the merits of NMFS's decision.

5.      Plaintiff Shell has, to date, invested billions of dollars in the exploration and development of energy resources on the Alaska Outer Continental Shelf ("OCS"), including over $2 billion for the purchase of its Chukchi Sea leases, acquired in the Chukchi Sea Planning Area Oil and Gas Lease Sale 193 held pursuant to the Department of Interior's OCS Oil & Gas Leasing Program for 2007-2012 (the "2007-2012 Five Year Plan"), and approximately $74 million for the purchase of its Camden Bay leases, acquired in the Beaufort Sea Oil and Gas Lease Sale 195 held in March 2005 pursuant to the Department of Interior's OCS Oil & Gas Leasing Program for 2002-2007 (the "2002-2007 Five Year Plan") and Beaufort Sea Oil and Gas Lease Sale 202 held in April 2007 pursuant to the 2002-2007 Five Year Plan.  Since 2007, Shell has satisfied countless statutory and regulatory requirements and has received dozens of necessary permits from various state and federal regulatory authorities in support of its proposed Arctic exploration.  Yet despite this long history of careful planning and successful compliance, Shell has yet to drill a single exploratory well on the leases in the Chukchi Sea that it purchased

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 3 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 3 of 28

in Lease Sale 193 under the 2007-2012 Five Year Plan, or in the Beaufort Sea that it purchased in Lease Sales 195 and 202 under the 2002-2007 Five Year Plan.

6.     NMFS's issuances of these two IHAs move Shell one step closer to obtaining all necessary permits and authorizations for exploratory drilling in the 2012 season. To prepare for the season, Shell must continue to mobilize the personnel and resources so that Shell is in position to begin exploratory drilling at the start of the brief open-water season in July 2012. This mobilization is a time-consuming and expensive process, and because many of the associated costs are fixed, Shell is required to commit substantial funds that will be lost and unrecoverable if Shell is ultimately unable to conduct exploration activities in the Chukchi Sea and the Beaufort Sea this summer.

7.     NMFS's issuances of these two IHAs are necessary preconditions for such exploration activities. But Shell's exploration activities could be stymied, and a significant portion of its investment lost, by a last-minute judicial challenge to the IHAs, if it resulted in an injunction or vacatur and remand of the IHAs.

8.     That the Defendants – environmental groups determined to block Arctic oil and gas exploration – would file such a challenge is a virtual certainty. These Defendants have a long history of bringing challenges to each and every stage of Shell's Arctic OCS exploration projects, as well as bringing countless other challenges to practically every federal regulatory decision pertaining to oil and gas activities in the Arctic, and some of them in fact have identified wildlife impacts as the motivation for their objections. It is the consistent practice of these Defendants to bring their judicial challenges, using the potential for litigation-related delay as a tactic in their publicly-stated attempt to block all oil and gas exploration on the Alaska OCS.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 4 of 28

Case 3:12-cv-00096-RRB   Document 1   Filed 05/03/12   Page 4 of 28

9.     Defendants' consistent practice of bringing judicial challenges to Shell's regulatory authorizations has required Shell to expend considerable time and resources defending its authorizations in various judicial and administrative forums.

10.     More importantly, forcing Shell to wait until the last-minute challenge these Defendants are sure to make, creates tremendous uncertainty regarding Shell's ability to proceed with its approved exploration activities in the Chukchi and Beaufort Seas in 2012.  As a result, Shell is placed in the untenable position where it must expend considerable resources in order to be prepared in the event that it is allowed to proceed with exploratory drilling in the 2012 open-water season, while at the same time remaining uncertain about the status of its duly issued IHAs.

11.     Rather than await the inevitable last-minute challenge, Shell affirmatively brings this declaratory judgment action so that it may expeditiously receive judicial review of NMFS's decisions to issue the IHAs.

## II.     THE PARTIES

12.     Plaintiff Shell Gulf of Mexico Inc. is a Delaware corporation with its principal place of business in Houston, Texas.

13.     Plaintiff Shell Offshore Inc. is a Delaware corporation with its principal place of business in Houston, Texas.

14.     Defendant Center for Biological Diversity, Inc. ("CBD") is an Arizona charitable corporation with its principal place of business in Tucson, Arizona.

15.     Defendant REDOIL, Inc. ("REDOIL") is an Alaska nonprofit corporation with its principal place of business in Fairbanks, Alaska.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 5 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 5 of 28

16. Defendant Alaska Wilderness League ("AWL") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

17. Defendant Natural Resources Defense Council, Inc. ("NRDC") is a New York not-for-profit corporation with its principal place of business in New York, New York.

18. Defendant Northern Alaska Environmental Center ("NAEC") is an Alaska nonprofit corporation with its principal place of business in Fairbanks, Alaska.

19. Defendant Pacific Environment and Resources Center ("PERC") is a California corporation with its principal place of business in San Francisco, California.

20. Defendant Sierra Club is a California corporation with its principal place of business in San Francisco, California.

21. Defendant Wilderness Society is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

22. Defendant Ocean Conservancy Inc. ("OCI") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

23. Defendant Oceana Inc. ("Oceana") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

24. Defendant Defenders of Wildlife ("DoW") is a District of Columbia nonprofit corporation with its principal place of business in Washington, D.C.

25. Defendant Greenpeace, Inc. ("Greenpeace") is a California nonprofit corporation with its principal place of business in Washington, D.C.

26. Defendant National Audubon Society, Inc. ("Audubon") is a New York nonprofit corporation with its principal place of business in New York, New York.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 6 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 6 of 28

27.     Defendant World Wildlife Fund ("WWF") is a Delaware nonprofit corporation with its principal place of business in Washington, D.C.

### III.     JURISDICTION AND VENUE

28.     This action seeks a declaration regarding NMFS's compliance with the MMPA and NEPA.  This Court has subject matter jurisdiction to determine these federal questions pursuant to 28 U.S.C. § 1331, and jurisdiction to issue a declaration pursuant to 28 U.S.C. §§ 2201-02.

29.     This action seeks a declaration regarding the legality of agency action.  This Court has subject matter jurisdiction to review agency action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-06.

30.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiffs SGOMI and SOI, citizens of Delaware and Texas, are completely diverse from the Defendants, citizens of Alaska, Washington, D.C., New York, California, and Arizona, and the value of the object of the litigation exceeds $75,000.

31.     This action seeks a declaration regarding agency issuance of two IHAs, the first authorizes harassment of marine mammals incidental to SGOMI's operations under its Revised Chukchi Sea Exploration Plan ("Revised Chukchi Sea EP") approved by the Bureau of Ocean Energy Management ("BOEM") on December 16, 2011, and the second authorizes harassment of

/

/

/

/

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 7 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 7 of 28

marine mammals exploration incidental to SOI's operations under its Revised Camden Bay Exploration Plan ("Revised Camden Bay EP") approved by BOEM[2] on August 4, 2011. All operations will take place on the Alaskan OCS. Venue is therefore appropriate under 28 U.S.C. § 1391(b)(2).

32.     This action presents an actual controversy amenable to resolution by declaratory judgment.

## IV.     FEDERAL STATUTORY AND REGULATORY BACKGROUND

33.     This action involves review of NMFS's issuance of IHAs for Shell's operations in the Chukchi Sea and Beaufort Sea under two federal statutes: MMPA and NEPA.

34.     In enacting the MMPA, Congress decreed that "marine mammals have proven themselves to be resources of great international significance" that "should be protected and encouraged to develop to the greatest extent feasible commensurate with sound policies of resource management and that the primary objective of their management should be to maintain the health and stability of the marine ecosystem." 16 U.S.C. § 1361(6).

35.     The MMPA imposes a prohibition on the taking and importation of marine mammals except as permitted through certain, statutorily-created authorizations. 16 U.S.C. § 1371.

---

[2] SOI's Revised Camden Bay EP was approved by the Bureau of Ocean Energy Management, Regulation, and Enforcement. Since the approval was issued, the agency has been divided into two agencies: BOEM and the Bureau of Safety and Environmental Enforcement ("BSEE"). Reorganization of Title 30: Bureaus of Safety and Environmental Enforcement and Ocean Energy Management, 76 Fed. Reg. 64,432 (October 18, 2011). For clarity, this complaint with refer to the resulting agencies by their current names.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 8 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 8 of 28

36.     The term "take" is defined to mean "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill." 16 U.S.C. § 1362(13). "Harassment" has two statutorily-defined levels. "Level A harassment" means "any act of pursuit, torment, or annoyance" which "has the potential to injure a marine mammal or marine mammal stock in the wild." 16 U.S.C. § 1362(18). "Level B harassment" means "any act of pursuit, torment, or annoyance" which "has the potential to disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavior patterns, including, but not limited to migration, breathing, nursing, breeding, feeding, or sheltering." *Id.*

37.     Congress created an expedited process by which parties may seek authorization for incidental harassment. The Secretary[3] must issue a one-year authorization for the "incidental, but not intentional, taking by harassment of small numbers of marine mammals of a species of population stock" (IHA) upon the request of any citizen engaging in a "specified activity" within a specific geographic region if the Secretary finds that the harassment "(I) will have a negligible impact on such species of stock, and (II) will not have an unmitigatable adverse impact on the availability of such species or stock for taking for subsistence uses . . ." 16 U.S.C. § 1371(a)(5)(D)(i).

38.     "Negligible impact" is defined by regulation to mean "an impact resulting from the specified activity that cannot be reasonably likely to, and is not reasonably expected to,

---

[3] The MMPA imposes this obligation on the Secretary of the department in which NOAA is operating as to all members of the order Cetacea and members, other than walruses, of the order Pininipedia, and the Secretary of the Interior for all other marine mammals. 16 U.S.C. § 1362(12)(A). This action concerns the authorization issued by NMFS for species within the jurisdiction of NOAA.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 9 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 9 of 28

adversely affect the species or stock through effect on annual rates of recruitment or survival." 50 C.F.R. § 216.103.

39.    The MMPA provides 45 days in which NMFS may review an application for an IHA, followed by a 30-day public notice and comment period.  Within 45 days of the close of the public comment period, NMFS must either issue or deny the authorization.   16 U.S.C. § 1371(a)(5)(D)(iii).

40.    NEPA is "an action-forcing statute" designed to insure that environmental information is available to public officials and citizens "before decisions are made and actions are taken."  40 C.F.R. § 1500.1; *see also* 4321 U.S.C. §§ 4321, 4331.

41.    NEPA requires federal agencies to evaluate the environmental consequences of their actions and prepare a written report on the environmental impact of "major Federal actions."  42 U.S.C. § 4332(2)(C); *see also* 40 C.F.R. § 1501.4 (Whether to prepare an environmental impact statement.).

42.    An Environmental Impact Statement ("EIS") is a detailed written statement evaluating the environmental impact of the proposed action, any adverse environmental effects which cannot be avoided if the proposal is implemented, alternatives to the proposed action, the relationship between short-term uses of the environmental and maintenance and enhancement of long-term productivity, and any irreversible and irretrievable commitments of resources involved in the proposed action.  42 U.S.C. § 4332(2)(C).

43.    Pursuant to Section 5.03 of NAO 216-6, NMFS will prepare an Environmental Assessment ("EA") "to determine whether significant environmental impacts could result from a proposed action."  An EA is a "concise public document" which serves to (i) "Briefly provide

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 10 of 28

Case 3:12-cv-00096-RRB    Document 1    Filed 05/03/12    Page 10 of 28

sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact"; (ii) "Aid an agency's compliance with the Act when no environmental impact statement is necessary;" and/or (iii) "Facilitate preparation of a statement where one is necessary." 40 C.F.R. § 1508.6(a).

44.     An EA must include "brief discussions of the need for the proposal, of alternatives as required by section 102(2)(E) [42 U.S.C. § 4332(2)(E)], or the environmental impacts of the proposed action and alternatives, and a listing of agencies and persons consulted." 40 C.F.R. § 1508.9(b).

45.     If the EA concludes that significant impacts may be "reasonably expected to occur," an EIS must be prepared. However, "[i]f the action is determined to be not significant, the EA and resulting FONSI [Finding of No Significant Impact] will be the final NEPA documents required." NAO 216-6, Section 5.03a.

46.     Neither the MMPA nor NEPA includes a provision mandating that actions challenging an agency's decision be brought within a certain period of time. Accordingly, the general six-year statute of limitations applies to any challenge that NMFS's issuances of the IHAs do not comply with the MMPA or NEPA. Accordingly, Defendants could wait until immediately prior to Shell's planned exploration activities in July 2012 to file a challenge to NMFS's issuances of the IHAs and to seek an injunction to prevent Shell from proceeding with its planned (and approved) exploration activities in the Chukchi and Beaufort Seas.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 11 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 11 of 28

## V. FACTS

### A. SGOMI's Chukchi Sea IHA

47.     SGOMI submitted its application for an IHA for its Revised Chukchi Sea Exploration Plan ("EP") on June 30, 2011.  After responding to comments from NMFS, SGOMI resubmitted a revised application on September 12, 2011.

48.     NMFS deemed the application submitted on September 12, 2011 complete.

49.     On November 9, 2011, NMFS published a Notice of Proposed IHA in the Federal Register which contained analyses of the proposed specified activities on marine mammals, their habitats, and the availability of marine mammals for subsistence uses.  76 Fed. Reg. 69,958 (Nov. 9, 2011).

50.     The Notice of Proposed IHA opened a 30-day comment period through December 9, 2011 on the proposed IHA for SGOMI's operations under the Revised Chukchi Sea EP.

51.     On December 9, 2011, environmental organizations including Defendants Alaska Wilderness League, Audubon Alaska, Center for Biological Diversity, Defenders of Wildlife, Earthjustice, Natural Resources Defense Council, Northern Alaska Environmental Center, Ocean Conservancy, Oceana, Pacific Environment, Resisting Environmental Destruction on Indigenous Lands (REDOIL), Sierra Club, The Wilderness Society, and the World Wildlife Fund submitted comments on the proposed IHA for SGOMI's operations under the Revised Chukchi Sea EP, arguing that the proposed IHA did not meet regulatory standards, and that NMFS had not fully assessed potential impacts related to the proposed operations, and that the proposed mitigation did not meet the applicable legal standard.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 12 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 12 of 28

**B.     SOI's Beaufort Sea IHA**

52.     SOI submitted its application for an IHA for its Revised Camden Bay EP on May 10, 2011.  After responding to comments from NMFS, SOI resubmitted a revised application on September 2, 2011.

53.     NMFS deemed the application submitted on September 2, 2011 complete.

54.     On November 7, 2011, NMFS published a Notice of Proposed IHA in the Federal Register which contained analyses of the proposed specified activities on marine mammals, their habitats, and the availability of marine mammals for subsistence uses.  76 Fed. Reg. 68,974 (Nov. 7, 2011).

55.     The Notice of Proposed IHA opened a 30-day comment period through December 7, 2011 on the proposed IHA for SOI's operations under the Revised Camden Bay EP.

56.     On December 7, 2011, environmental organizations including Defendants Alaska Wilderness League, Audubon Alaska, Center for Biological Diversity, Defenders of Wildlife, Earthjustice, Natural Resources Defense Council, Northern Alaska Environmental Center, Oceana, Pacific Environment, Resisting Environmental Destruction on Indigenous Lands (REDOIL), Sierra Club, The Wilderness Society, and World Wildlife Fund submitted comments on the proposed IHA for SOI's operations under the Revised Camden Bay EP, arguing that the proposed IHA did not meet regulatory standards, and that NMFS had not fully assessed potential impacts related to the proposed operations, and that the proposed mitigation did not meet the applicable legal standard.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 13 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 13 of 28

C.     **NEPA Review of the Proposed IHAs**

57.     On February 27, 2012, NMFS announced the availability of the Draft Environmental Assessment for the Issuance of Incidental Harassment Authorizations for the Take of Marine Mammals by Harassment Incidental to Conducting Exploratory Drilling Programs in the U.S. Beaufort and Chukchi Seas ("Draft EA") and opened a 30-day public comment period through March 28, 2012.  77 Fed. Reg. 11492 (Feb. 27, 2012).

58.     On March 28, 2012, environmental organizations including Defendants Alaska Wilderness League, Center for Biological Diversity, Defenders of Wildlife, Earthjustice, Natural Resources Defense Council, Ocean Conservancy, Oceana, Pacific Environment, Resisting Environmental Destruction on Indigenous Lands (REDOIL), Sierra Club, The Wilderness Society, and World Wildlife Fund submitted comments on the Draft EA arguing that the Draft EA contained "fundamental errors" that "compromise" its "integrity."

C.     **NMFS's Issuance of the IHAs for the Revised Chukchi Sea EP and the Revised Camden Bay EPs**

59.     On May 1, 2012, NMFS issued a Final EA for the Issuance of Incidental Harassment Authorizations for the Take of Marine Mammals by Harassment Incidental to Conducting Exploratory Drilling Programs in the U.S. Beaufort and Chukchi Seas ("Final EA").

60.     The EA concluded that the proposed IHAs would not result in a significant impact and was therefore accompanied by a Finding of No Significant Impact ("FONSI") for the program in each sea.

61.     NMFS issued an IHA for operations under the Revised Chukchi Sea EP ("Chukchi Sea IHA") on May 2, 2012, authorizing incidental take by Level B harassment of small numbers of bowhead whales, gray whales, beluga whales, minke whales, fin whales,

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 14 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 14 of 28

humpback whales, killer whales, harbor porpoises, ringed seals, bearded seals, spotted seals, and ribbon seals. The IHA specifies the amount of take authorized for each species, the activities authorized to cause a take, and required mitigation measures including the use of (i) a marine mammal monitoring program using two NMFS-qualified Protected Species Observers (ii) routes and navigation practices to avoid disturbing marine mammals or interfering with subsistence activities, and (iii) specialized techniques to minimize acoustic impact to marine mammals.

62. Operations authorized by the Chukchi Sea IHA will have a negligible impact on the species and stock for which the IHA was issued and will not have an unmitigatable adverse impact on the availability of such species and stocks for taking for subsistence uses.

63. The Chukchi Sea IHA is valid under, and complies with, MMPA and NEPA.

64. NMFS issued an IHA for operations under the Revised Camden Bay EP ("Beaufort Sea IHA") on May 2, 2012, authorizing incidental take by Level B harassment of small numbers of bowhead whales, gray whales, beluga whales, harbor porpoises, ringed seals, bearded seals, spotted seals, and ribbon seals. The IHA specifies the amount of take authorized for each species, the activities authorized to cause a take, and required mitigation measures including the use of (i) a marine mammal monitoring program using two NMFS-qualified Protected Species Observers (ii) routes and navigation practices to avoid disturbing marine mammals or interfering with subsistence activities, and (iii) specialized techniques to minimize acoustic impact to marine mammals.

65. Operations authorized by the Beaufort Sea IHA will have a negligible impact on the species and stock for which the IHA was issued and will not have an unmitigatable adverse impact on the availability of such species and stocks for taking for subsistence uses.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 15 of 28
Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 15 of 28

66.     The Beaufort Sea IHA is valid under, and complies with, MMPA and NEPA.

67.     NMFS's issuances of the two IHAs constitute final administrative actions. *First*, NMFS's approvals constitute the culmination of the agency's decision-making processes. No further action by NMFS is necessary to give effect to its determinations that the Chukchi Sea IHA and Beaufort Sea IHA are warranted under the statutory and regulatory requirements. *Second*, the IHAs have concrete legal consequences: they permit Shell to proceed with its exploration activities in the Chukchi and Beaufort Seas pursuant to approved exploration plans.

68.     In the absence of swift judicial review, Shell will suffer undue hardship. There is no reason to delay such review given the immediate and substantial controversy between Shell and Defendants concerning the appropriateness of the IHAs.

**D.      The Existence of an Immediate and Substantial Controversy is Not Reasonably Disputable Given Defendants' Longstanding Pattern and Practice of Filing Challenges to Shell's Regulatory Authorizations**

69.     Given their public statements and actions and their longstanding pattern and practice of filing challenges to Shell's regulatory authorizations, Defendants cannot reasonably contend that they will not challenge NMFS's issuance of the two IHAs.

70.     Indeed, it is a virtual certainty that Defendants will file a legal challenge to the IHAs. In various combinations, Defendants have brought challenges to Shell's planned exploration activities at every available opportunity. Additionally, Defendants have, jointly and separately, made public statements attacking the propriety of Shell's OCS activities generally and their impact on marine mammals specifically. (*See* ¶¶ 75-84) And Defendants have, jointly and separately, brought countless other challenges to federal regulatory decisions pertaining to oil and gas activities in the Arctic. Defendants' practice of challenging prior agency approvals together

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 16 of 28

with their public statements regarding the IHAs make it overwhelmingly clear that they will likely bring such a challenge to NMFS's issuances of the IHAs.

71.     Defendants have challenged virtually every agency approval associated with SGOMI and its affiliates' exploration activities in the Arctic, including:

    a.    Seismic Activity Authorizations

        i.    Authorized Seismic Activity in the Chukchi and Beaufort Seas (*Native Vill. of Point Hope v. Minerals Mgmt. Serv.*, 564 F. Supp. 2d 1077 (D. Alaska 2008))

    b.    Five-Year Plan & Lease Sales

        i.    2007-2012 Alaska OCS Five-Year Plan (*Ctr. for Biological Diversity v. U.S. Dept. of Interior*, 563 F.3d 466 (D.C. Cir. 2009))

        ii.    Lease Sale 193 (*Native Village of Point Hope v. Salazar*, No. 1:08-cv-00004-RRB (D. Alaska dismissed Feb. 15, 2012)) appeal filed Apr. 13, 2012 (9th Cir. No. 12-35287)[4]

    c.    Exploration Plans

        i.    SOI's 2007-2009 Camden Bay exploration plan (*Alaska Wilderness League v. Kempthorne*, 548 F.3d 815 (9th Cir. 2008), *vacated and withdrawn*, 559 F.3d 916 (9th Cir. 2009), *appeal dismissed as moot*, *Alaska Wilderness League v. Salazar*, 571 F.3d 859 (9th Cir. 2009))

        ii.    Shell's 2010 Chukchi Sea and Camden Bay exploration plans (*Native Village of Point Hope v. Salazar*, 378 Fed. App'x 747 (9th Cir. 2010))

        iii.    SOI's 2012 Camden Bay exploration plan (*Native Village of Point Hope v. Salazar*, No. 11-72891 (9th Cir. filed Sept. 29, 2011))

---

[4] Lease Sale 202, in which SOI purchased some of its Beaufort Sea leases, was also challenged by parties not named as defendants in this matter and upheld by this Court and the U.S. Court of Appeals for the Ninth Circuit. *North Slope Borough v. MMS*, No. 3:07-cv-00045-RRB (D. Alaska 2008), *aff'd* No. 08-35180 (9th Cir. 2009).

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 17 of 28

Case 3:12-cv-00096-RRB    Document 1    Filed 05/03/12    Page 17 of 28

       iv.       SGOMI's 2012 Chukchi Sea exploration plan (*Native Village of Point Hope v. Salazar*, No. 12-70459 (9th Cir. filed Feb. 13, 2012))

   d.      Air Permits

       i.       *Discoverer* drillship (*In re Shell Gulf of Mexico, Inc. & Shell Offshore, Inc.*, 15 E.A.D. __ (EAB Dec. 30, 2010) (administrative appeal remanding permit to Region 10 for additional review))

       ii.      *Discoverer* drillship (*Shell Gulf of Mexico, Inc.*, 15 E.A.D. __ (EAB Jan. 12, 2012) (dismissal of administrative appeal of permit issued following remand proceedings), petition for review filed Feb. 17, 2012 (9th Cir. No. 12-70518))

       iii.    *Kulluk* drilling unit (In re *Shell Offshore Inc.*, OCS Appeal Nos. 08-01 through 08-03) (administrative appeal of permit issued following remand proceedings ordered by earlier 2007 challenge to original *Kulluk* permit; appeal dismissed prior to decision upon withdrawal of permit application)

       iv.      *Kulluk* drilling unit (*Shell Offshore Inc.*, 15 E.A.D. __ (EAB Mar. 30, 2011) (dismissal of administrative appeal of resubmitted permit)

72.    Defendants have attempted to stop oil & gas exploration activities through challenges to agency actions affecting wildlife, including:

   a.      Endangered Species Act challenges

       i.       No designation of Pacific walrus (*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Service*, No. 3:08-cv-00265 (D. Alaska))

       ii.      No designation of ribbon seal (*Ctr. for Biological Diversity v. Lubchenco*, No. C-09-04087 (N.D. Cal. Dec. 21, 2010))

       iii.    Polar bear's designation as threatened, rather than endangered (*In re Polar Bear Endangered Species Act Listing & § 4(d) Rule Litig.*, Misc. No. 08-764 (EGS), MDL Docket No. 1993, 794 F. Supp. 2d 65 (D.D.C. 2011))

   b.      Incidental Take Regulations

       i.       Polar bear and Pacific walrus incidental take regulations for Beaufort Sea oil and gas activities (*Ctr. for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009))

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 18 of 28

Case 3:12-cv-00096-RRB   Document 1   Filed 05/03/12   Page 18 of 28

ii.    Polar bear and Pacific walrus incidental take regulations for Chukchi Sea oil and gas activities (*Ctr. for Biological Diversity v. Salazar*, No. 3:08-cv-00159 RRB (D. Alaska Jan. 2010), *appeal pending*, No. 10-35123 (9th Cir.)).

73.    A chart detailing each Defendant's participation in the above challenges is attached hereto as Exhibit C.

74.    While Shell is not the only oil and gas company pursuing exploratory drilling on the Alaska OCS, it is the furthest along with its exploration plans. Defendants thus have focused on pursuing legal challenges to Shell-related exploration activities, although not to the exclusion of challenging agency approvals related to other companies activities in the Arctic, including a recent challenge to general wastewater discharge permit notices by Lease Sale 193 lessees ConocoPhillips and Statoil (*Inupiat Community of the Arctic Slope v. Jackson*, No. 11-73182 (9th Cir. filed Oct. 21, 2011)).

75.    Consistent with this pattern of judicial challenges, Defendants and their counsel have made numerous and repeated public statements indicating their intent to stop drilling in the Arctic altogether – *e.g.*, "[o]ne [drilling] ship is one ship too many"[5] – and, specifically, to object to potential impacts on marine mammals.

76.    For example, in a story noting that Shell's "drilling plans suddenly seem to be on the move," the *Alaska Dispatch* reported: "An official with Oceana, an environmental group that

---

[5] Dan Joling, *Shell Oil Withdraws Beaufort Drilling Plan*, ANCHORAGE DAILY NEWS, May 6, 2009, *available at* http://www.adn.com/2009/05/06/v-printer/785631/shell-oil-withdraws-beaufort-drilling.html (statement of Brendan Cummings, an attorney for Defendant Center for Biological Diversity).

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 19 of 28

Case 3:12-cv-00096-RRB    Document 1    Filed 05/03/12    Page 19 of 28

has fought the company's plans, warned that . . . [s]ome approvals can still be taken to court."[6] The same article quoted Susan Murray, senior director for the Pacific at Oceana, saying: "One of the outcomes of this headlong rush is that the conversation could shift from policy makers to courtrooms."

77.    These threats of litigation are just the latest in a long string of comments by Defendants condemning agency actions issuing authorizations needed for Shell's 2012 exploration season and identifying purported errors that, if accurate, they contend would constitute a basis for reversal on appeal.  These statements can only be interpreted as tacit threats of litigation to attempt to overturn agency approval of Shell's exploration activities.

78.    For example, on August 5, 2011, following BOEM's approval of SOI's Revised Camden Bay EP, Earthjustice – a public interest law firm that has represented most of the Defendants in many of the above-noted challenges – issued a statement condemning the agency's "rubber stamp" approval that "risks harming the endangered bowhead whale, a species central to Alaska Native subsistence traditions."  The statement also collected and reproduced statements by many of the Defendants that likewise criticized agency approval of the EP.[7]

79.    Taken at face value, these assertions of irrationality, lack of credibility, inadequacy, and falsehood, together with the exhortation that Shell's plans "should be stopped"

---

[6] Alex DeMarban, *Lawsuit threats loom over latest approval for Shell's Alaska drilling*, ALASKA DISPATCH, Feb. 17, 2012, *available at* http://www.alaskadispatch.com/article/lawsuit-threats-loom-over-latest-approval-shells-alaska-drilling.

[7] Press Release, Earthjustice, Feds Ignore Risks and Green Light Shell Drilling in Arctic Ocean (August 5, 2011), *available at* http://earthjustice.org/news/press/2011/feds-ignore-risks-and-green-light-shell-drilling-in-arctic-ocean.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 20 of 28

Case 3:12-cv-00096-RRB    Document 1    Filed 05/03/12    Page 20 of 28

in a statement issued by a law firm, strongly suggest that the Defendants intend to "stop" Shell's exploration activity through litigation.

80.     Defendants' assertions that the agency's approval of the EP plan puts marine mammals and subsistence community at risk and fails to require necessary information bespeak not only general environmental concerns but specific statutory and regulatory objections that can be rectified only through litigation.

81.     In fact, Defendant CBD has publicly boasted about its history of litigation in opposition to Shell's exploration activities.  On its website, CBD boasts that "the Center and our Alaskan allies have successfully blocked offshore oil development in the Beaufort and Chukchi seas through as series of lawsuits. . . . As a result [of these lawsuits], Shell Oil – slated to drill in the Arctic every year since 2007 – has not yet stuck its drills in the water."  CBD, moreover, has made its future intentions clear, stating that "Shell Oil has put forth even more extreme drilling plans for 2012" and promising that "the Center and our allies continue to battle it out in court, while at the same time pressing for a permanent halt on offshore drilling in all U.S. waters, starting in Alaska."  CBD also states on its website that, "There is a short window to stop risky drilling with two steps: (1) halt drilling, because there's no adequate oil-spill response and (2) defer new lease sales proposed for the Beaufort and Chukchi seas.  This provides a powerful opportunity for a victory that will protect the Arctic Ocean. . . . We have an important opportunity right now to protect the Arctic environment. There is a broad coalition of

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 21 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 21 of 28

environmental organizations and indigenous leaders who are opposed to Arctic Ocean drilling. The federal government must not allow drilling to proceed in the Beaufort and Chukchi seas."[8]

82.     The Defendants' intent to litigate is further corroborated by statements by the law firm Earthjustice.  In a statement on the organization's website Earthjustice characterized Shell's plans as taking place "directly in areas used by endangered bowhead whale [sic] for migration, feeding and resting" and argued that Shell's proposed drilling "threaten[s] to harm wildlife and coastal Alaska Native communities that depend on the ocean to sustain their unique subsistence culture."[9]  Earthjustice identified the IHAs as authorizations Shell must obtain prior to drilling. Consistent with this posturing, Earthjustice has consistently threatened to litigate the agency approvals necessary for Shell to proceed with its exploration activities often with reference to species impacts as the alleged motivation for the litigation.

83.     For instance, a posting on Earthjustice's website on August 19, 2011 noted that "Earthjustice attorneys [had] been analyzing the agency's decision" to approve SOI's Revised Camden Bay EP and concluded that "[t]he only good news about [the exploration plan approval] is that this approval is conditional."  Earthjustice singled out the need for an IHA as one of these conditions and argued that sound exposure from Shell's operations "could harm the population [of bowhead whales], particularly mothers and young calves, and could affect Alaska Native communities that rely on the bowhead whale and other species to sustain their subsistence way of

---

[8]  Center for Biological Diversity, *Arctic Oil Development—Our Campaign*, *available at* http://www.biologicaldiversity.org/programs/public_lands/energy/dirty_energy_development/oil _and_gas/arctic/index.html.

[9]  Press Release, Earthjustice, Shell to Forego 2011 Arctic Ocean Drilling (February 3, 2011), *available    at*    http://earthjustice.org/news/press/2011/shell-oil-to-forego-2011-arctic-ocean-drilling.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 22 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 22 of 28

life." Accordingly, Earthjustice promised to "be very vigilant" in "making sure Shell does not start drilling without the necessary environmental protections in place."[10]     And a later posting on the organization's website condemned Shell's planned 2012 exploration activities, called on the President to "delay Arctic Ocean drilling," and threatened to "get [the President's] attention in any way we can."[11]     In a recent press report on the proposed IHAs, Michael Mayer of Earthjustice stated "even just isolating the noise effects raises real concerns."[12]

84.     Whit Sheard, Pacific counsel and senior advisor for Defendant Oceana stated "Oceana and the other groups . . . would use every weapon at their disposal to ensure that drilling, if it ever takes place, is conducted in the safest possible way."[13]  Defendant CBD stated "we're not leaving.  We're fighting back, because the Arctic is simply too important to turn our backs on.  It's home to polar bears, walruses, bowhead whales and other endangered and highly sensitive wildlife.  Drilling for oil in its remote, ice-choked waters would carry unacceptably high risks to wildlife and the region's pristine landscapes."[14]

---

[10] David Lawlor, *Shell Oil Living in a Land of Make Believe*, Earthjustice (Aug. 19, 2011), *available at* http://earthjustice.org/blog/2011-august/shell-oil-living-in-a-land-of-make-believe.

[11] Jared Saylor, *Dear Obama: How Could You Approve Drilling in Arctic Ocean?*, Earthjustice (Dec. 12, 2011), *available at* http://earthjustice.org/blog/2011-december/dear-obama-how-could-you-approve-drilling-in-arctic-ocean.

[12] Phil Taylor, "Agencies gauge drilling noise impacts on marine mammals in quiet Arctic waters," Greenwire (April 6, 2012) *available at* http://www.eenews.net/public/Greenwire/2012/04/06/1

[13] John Broder, *Legal Strategy Taken by Shell is Rarely Successful*, N.Y. TIMES (Mar. 4, 2012) , *available at* http://www.nytimes.com/2012/03/05/us/shell-files-pre-emptive-lawsuit-over-alaska-drilling.html.

[14] Alex Ralston, *Shell Sues Environmentalists Over Arctic Drilling*, CBD In the News (Mar. 19, 2012), *available at* http://www.biologicaldiversity.org/news/center/index.php.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 23 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 23 of 28

85. Defendants' campaign to stop Shell's exploration activities is not limited to making public statements and filing litigation. It has now escalated into dangerous direct action tactics that threaten the safety of the assets and people involved in Shell's program. On February 23, 2012, six self-identified Greenpeace activists unlawfully boarded the exploration drilling vessel *Noble Discoverer*, which Shell has contracted to perform some of the very Chukchi Sea exploration drilling at issue in this litigation. The Greenpeace activists successfully prevented the *Noble Discoverer* from leaving the Port of Taranaki, New Zealand, for several days before being arrested by local police. On its website, Greenpeace called this illegal conduct "a fitting first chapter for what will undoubtedly be an epic battle" to stop Shell's planned exploration activities, and asserted that "both common sense and scientific consensus tells us there is no way to safely drill" in the Arctic.[15] Later, in March, twenty Greenpeace activists once again illegally trespassed on Shell vessels, this time "occupying" two Finnish icebreakers under contract to support Shell's activities. Greenpeace claimed this illegal behavior is intended to convince Shell to "scrap their insane Arctic drilling plans."[16] And on May 1, in the most recent aggressive

---

[15] Bunny McDiarmid, *Seven of Us Climbed Up That Drillship to Stop Arctic Drilling, but 133,000 of Us Came Down*, Greenpeace (Feb. 27, 2012), *available at* http://greenpeaceblogs.com/2012/02/27/seven-of-us-climbed-up-that-drillship-to-stop-arctic-drilling-but-133000-of-us-came-down/.

[16] Nick Young, *Will brooms and shovels clean up the Arctic? We don't think so.*, Greenpeace (Mar. 16, 2012), *available at* http://www.greenpeace.org/new-zealand/en/news/blog/will-brooms-and-shovels-clean-up-the-arctic-w/blog/39543/.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 24 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 24 of 28

effort, Greenpeace boarded and occupied one of the same Finnish icebreaker, chaining themselves to the vessel and hanging protest banners.[17]

86.    Such statements and actions challenging the core determinations underlying NMFS's issuances of the IHAs – that Shell's activities will have a *negligible* impact on the protected species – together with Defendants' years-long pattern of challenging virtually every approval of the various aspects of Shell's exploration activities, as well as Defendants' demonstrated willingness to stop Shell's exploration activities "any way we can" – establish that Defendants will undoubtedly challenge NMFS's issuance of the IHAs.

87.    Despite the overwhelming likelihood of such a challenge, Shell is subject to significant uncertainty in light of Defendants' consistent practice of waiting until the latest possible date before filing their judicial challenges.  For example, varying combinations of Defendants waited nearly all, if not entirely all, of the sixty-day period permitted under OCSLA before filing their challenges to SGOMI's Revised Chukchi Sea EP, SOI's Revised Camden Bay EP, SGOMI's 2010 Chukchi Sea EP, and SOI's 2010 Camden Bay EP.

88.    Given the finality of NMFS's authorizations, the purely legal nature of the declaration sought, the immediate and substantial conflict between Shell and Defendants, and the harm that Shell would suffer in the absence of a prompt review of NMFS's actions, declaratory judgment is appropriate here to settle all aspects of the controversy at issue and clarify Shell's

/

---

[17] Associated Press, *Greenpeace protesters board Shell icebreaker in Finland* (May 1, 2012) *available at* http://www.adn.com/2012/05/01/2447311/greenpeace-activists-board-icebreaker.html.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 25 of 28

Case 3:12-cv-00096-RRB    Document 1    Filed 05/03/12    Page 25 of 28

rights to proceed with its planned exploration activities, without causing any inconvenience to the parties.

## **CLAIM FOR RELIEF**

### *Declaratory Judgment*

89.     Plaintiff Shell incorporates the allegations of paragraphs 1 through 88 by reference.

90.     The Chukchi Sea IHA satisfies applicable MMPA requirements because operations under the Revised Chukchi Sea EP will have a negligible impact on marine mammal species and stocks in the project area and will not have an unmitigatable adverse impact on the availability of such species or stock for subsistence uses.  NMFS complied with NEPA prior issuing the Chukchi Sea IHA.

91.     The Beaufort Sea IHA satisfies applicable MMPA requirements because operations under the Revised Camden Bay EP will have a negligible impact on marine mammal species and stocks in the project area and will not have an unmitigatable adverse impact on the availability of such species or stock for subsistence uses.  NMFS complied with NEPA prior issuing the Beaufort Sea IHA

92.     Based on Defendants' substantial threat of litigation and Defendants' pattern and practice of filing last-minute challenges to Shell's regulatory authorizations, Shell requests a declaration from the Court that:

a.   The procedures NMFS employed in reviewing and issuing the Chukchi Sea IHA comply with the APA, MMPA, and NEPA;

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 26 of 28

Case 3:12-cv-00096-RRB     Document 1     Filed 05/03/12     Page 26 of 28

b.  NMFS's conclusion that SGOMI is entitled to the Chukchi Sea IHA under the MMPA is not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law;

c.  The procedures NMFS employed in reviewing and issuing the Beaufort Sea IHA comply with the APA, MMPA, and NEPA;

d.  NMFS's conclusion that SOI is entitled to the Beaufort Sea IHA under with the MMPA is not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays that the Court:

1.  Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that:

a.  NMFS complied with the APA, MMPA, and NEPA in reviewing and issuing the Chukchi Sea IHA; and NMFS's conclusion that SGOMI is entitled to the Chukchi Sea IHA under with the MMPA is not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law.

b.  NMFS complied with the APA, MMPA, and NEPA in reviewing and issuing the Beaufort Sea IHA; and NMFS's conclusion that SOI is entitled to the Beaufort Sea IHA under with the MMPA is not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law; and

2.  Award it such other and further relief as is just and equitable.

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____
Page 27 of 28

Case 3:12-cv-00096-RRB    Document 1    Filed 05/03/12    Page 27 of 28

DATED at Anchorage, Alaska this 2nd day of May, 2012.

CROWELL & MORING LLP
Attorneys for Shell Gulf of Mexico Inc. and Shell
Offshore Inc.

 /s/ Kyle W. Parker
Kyle W. Parker, ABA No. 9212124
David J. Mayberry, ABA No. 9611062
CROWELL & MORING LLP
1029 W. 3rd Avenue, Suite 402
Anchorage, Alaska 99501
Telephone:      (907) 865-2600
Facsimile:      (907) 865-2680
kparker@crowell.com
dmayberry@crowell.com

COMPLAINT FOR DECLARATORY RELIEF
*Shell Gulf of Mexico, Inc. et al. vs. Center for Biological Diversity, et al.*, Case No. _____