KEKER & VAN NEST LLP
RACHAEL E. MENY (*admitted pro hac vice*)
rmeny@kvn.com
JUSTINA SESSIONS (*admitted pro hac vice)*
jsessions@kvn.com
SHILPI AGARWAL (*admitted pro hac vice*)
sagarwal@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415-391-5400
Facsimile:     415-397-7188

Attorneys for Center For Biological Diversity, Inc., REDOIL, Inc., Alaska Wilderness League, Natural Resources Defense Council, Inc., Northern Alaska Environmental Center, Pacific Environment And Resources Center, The Wilderness Society, Ocean Conservancy, Inc., Oceana, Inc., Defenders Of Wildlife, Greenpeace, Inc., National Audubon Society, Inc., and World Wildlife Fund, Inc.

LAW OFFICE OF GEORGE E. HAYS
GEORGE E. HAYS *(admitted pro hac vice)*
236 West Portal Ave. # 110
San Francisco, CA  94127
Telephone:     415-566-5414

Attorneys for Sierra Club

SEAVER & WAGNER, LLC
Timothy Seaver – ABA # 9711092
tseaver@seaverwagner.com
500 L Street, Suite 501
Anchorage, AK  99501
Telephone:     907-646-9033
Facsimile      907-258-7280

Attorneys for all Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SHELL GULF OF MEXICO, INC. and SHELL OFFSHORE INC.<br><br>            Plaintiffs,<br><br>     v.<br><br>CENTER FOR BIOLOGICAL DIVERSITY, INC., et al.<br><br>            Defendants. | Case No. 3:12-CV-00096-RRB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br>(Fed. R. Civ. P. 12(b)(1), 12(b)(6)) |

664173.01

# Table of Contents

I.   Background ........................................................................................................................3

    A.   Congress created a procedure for judicial review of agency action, and this
         suit falls outside of it. ...........................................................................................3

    B.   Shell sued the Organizations to preempt potential claims that the
         Organizations could, in due course, bring against NMFS. ...................................5

II.  Legal Standard for a Motion to Dismiss ...........................................................................6

III. This Court Must Dismiss Shell's Complaint .....................................................................7

    A.   Shell's attempt to use the DJA to obtain a ruling on a non-party's potential
         liability violates the case-or-controversy requirement. ........................................7

         1.   Shell's attempt to use the DJA to force this Court to predict
              NMFS's liability to the Organizations contravenes the requirement
              that parties be legally adverse. ................................................................8

         2.   Shell's attempt to rush the proper process violates the ripeness
              doctrine. ................................................................................................14

    B.   Shell's attempt to affirm agency action is not based on a cognizable claim. ........16

    C.   Shell cannot bring a DJA suit based on the Organizations' constitutionally
         protected petitioning activity. ...............................................................................18

         1.   Under the *Noerr-Pennington* doctrine, this Court cannot interpret
              the DJA to allow claims based solely on protected petitioning
              activity. ................................................................................................19

    D.   This Court should decline to exercise its discretion to entertain Shell's suit
         because Shell's abuse of the DJA would create a dangerous precedent
         allowing parties to sue to affirm agency action. .................................................25

IV.  Conclusion .......................................................................................................................26

i

**TABLE OF AUTHORITIES**

**Federal Cases**

*Abbot Labs. v. Gardner*
    387 U.S. 136 (1967)............................................................................................................ 14

*Aetna Life Ins. Co. v. Haworth*
    300 U.S. 227 (1937)......................................................................................................... 8, 9

*Am. States Ins. Co. v. Kearns*
    15 F.3d 142 (9th Cir. 1994) ................................................................................................ 9

*BE&K Constr. Co. v. Nat'l Labor Relations Bd.*
    536 U.S. 516 (2002)..................................................................................................... 19, 23

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)............................................................................................................ 5

*Clinton v. Acequia, Inc.*
    94 F.3d 568 (9th Cir. 1996) .............................................................................................. 14

*Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*
    915 F.2d 167 (5th Cir. 1990) ............................................................................ 9, 11, 12, 13

*Columbus Cmty. Cable Access v. Luken*
    923 F. Supp. 1026 (S.D. Ohio 1996) ............................................................................... 15

*Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Co.*
    642 F.3d 849 (9th Cir. 2011) .............................................................................................. 9

*Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*
    514 U.S. 122 (1995)............................................................................................................ 3

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*
    365 U.S. 127 (1961)......................................................................................................... 21

*Empress LLC v. City & County of S.F.*
    419 F.3d 1052 (9th Cir. 2005) .......................................................................................... 19

*Fifty Assocs. v. Prudential Ins. Co. of Am.*
    446 F.2d 1187 (9th Cir. 1970) ............................................................................................ 8

664173.01

*Fla. Power & Light Co. v. Lorion*
  470 U.S. 729 (1985)...................................................................................................................... 4

*Flast v. Cohen*
  392 U.S. 83 (1968)........................................................................................................................ 8

*Gen-Probe, Inc. v. Amoco Corp.*
  926 F. Supp. 948 (S.D. Cal. 1996)............................................................................................. 19

*Gov't Emps. Ins. Co. v. Dizol*
  133 F.3d 1220 (9th Cir. 1998) .................................................................................................... 25

*Humane Soc'y of U.S. v. Locke*
  626 F.3d 1040 (9th Cir. 2010) ...................................................................................................... 4

*Kottle v. NW Kidney Ctrs.*
  146 F.3d 1056 (9th Cir. 1998) .................................................................................................... 20

*Kousar v. Mueller*
  549 F. Supp. 2d 1194 (N.D. Cal. 2008) ..................................................................................... 10

*Levin Metals Corp. v. Parr-Richmond Terminal Co.*
  799 F.2d 1312 (9th Cir. 1986) .................................................................................................... 10

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) (plurality opinion) ..................................................................................... 13

*Lujan v. Nat'l Wildlife Fed'n*
  497 U.S. 871 (1990)................................................................................................................. 3, 17

*Manistee Town Ctr. v. City of Glendale*
  227 F.3d 1090 (9th Cir. 2000) .................................................................................................... 19

*Mylan Pharm., Inc. v. Thompson*
  268 F.3d 1323 (Fed. Cir. 2001).................................................................................................... 9

*Or. Natural Res. Council v. Mohla*
  944 F.2d 531 (9th Cir. 1991) ................................................................................................... 7, 22

*Plum Creek Timber Company v. Trout Unlimited*
  255 F. Supp. 2d 1159 (D. Id. 2003) ..................................................................................... *passim*

*Portland Audubon Soc'y v. Endangered Species*
  984 F.2d 1534 (9th Cir. 1993) ...................................................................................................... 4

*Preiser v. Newkirk*
  422 U.S. 395 (1975)................................................................................................................. 8, 13

iii

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*
344 U.S. 237 (1952)..............................................................................................................16

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) ...............................................................................................7

*San Diego Gun Rights Comm. v. Reno*
98 F.3d 1121 (9th Cir. 1996) ...............................................................................................20

*Schilling v. Rogers*
363 U.S. 666 (1960)................................................................................................................9

*Shields v. Norton*
289 F.3d 832 (5th Cir. 2002) ...............................................................................................24

*Sosa v. DIRECTV, Inc.*
437 F.3d 923 (9th Cir. 2006) ...............................................................................19, 20, 21

*Spallone v. United States*
493 U.S. 265 (1990) (Brennan, J. dissenting)......................................................................23

*Spencer Enters., Inc. v. United States*
345 F.3d 683 (9th Cir. 2003) .................................................................................................3

*Supreme Court of Virginia v. Consumers Union*
446 U.S. 719 (1980)..............................................................................................................23

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000) .............................................................................................14

*Thomas v. Union Carbide Agric. Prods. Co.*
473 U.S. 568 (1985)..............................................................................................................14

*Westlands Water Distrib. Dist. v. Natural Res. Def. Council*
276 F. Supp. 2d 1046 (E.D. Cal. 2003)..............................................................9, 19, 20, 23

*Wilton v. Seven Falls Co.*
515 U.S. 277 (1995)..............................................................................................................25

*Window Sys., Inc. v. Manchester Mem. Hosp.*
424 F. Supp. 331 (D. Conn. 1976).......................................................................................17

**Federal Statutes**

5 U.S.C. § 702.................................................................................................................. 3, 17

5 U.S.C. § 706.........................................................................................................................4

iv

16 U.S.C. § 1361 *et seq.* ....................................................................................................... 4

28 U.S.C. § 2201 ..................................................................................................................... 9

42 U.S.C. § 4321 *et seq.* ....................................................................................................... 4

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(1) .............................................................................. 6

Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 7, 16

Still unsatisfied with the process Congress provided for judicial review of agency action, Shell[1] asks this Court yet another time to disregard those requirements—and to exceed its jurisdiction—for the sake of Shell's convenience. This is the second of three suits by Shell seeking to preempt some possible legal challenges to a federal agency's decision. Other than changing the agency approvals at issue, Shell's latest complaint does not meaningfully differ from its first improper attempt to use the Declaratory Judgment Act[2] to avoid the proper process for judicial review of agency action. Shell's repeated filings provide further evidence of why permitting such suits to proceed would be improper and would open the courts to a flood of new cases.

The Organizations[3] that Shell names as defendants could, in due course, bring a suit under the Administrative Procedure Act,[4] naming the responsible agency, NMFS,[5] as the defendant. But Shell does not want to wait for the process to unfold properly. So, instead, it has asked this Court to ignore all jurisdictional and procedural requirements simply because Shell's proposed drilling activities must occur within a narrow time frame. Although the federal courts can entertain only complaints that present a dispute between legally adverse parties, Shell wants this Court to resolve a potential dispute between the Organizations and another entity. And, even though the APA provides a limited cause of action only to aggrieved parties and only against federal entities, Shell filed this suit as a beneficiary of agency action and against private entities.

---

[1] "Shell" refers to Plaintiffs Shell Gulf of Mexico, Inc. and Shell Offshore Inc.

[2] 28 U.S.C. § 2201 ("DJA").

[3] The "Organizations" refers collectively to Defendants Center For Biological Diversity, Inc., REDOIL, Inc., Alaska Wilderness League, Natural Resources Defense Council, Inc., Northern Alaska Environmental Center, Pacific Environment and Resources Center, The Wilderness Society, Ocean Conservancy, Inc., Oceana, Inc., Defenders Of Wildlife, Greenpeace, Inc., National Audubon Society, Inc., World Wildlife Fund, Inc., and the Sierra Club.

[4] Pub. L. 79-404, 60 Stat. 237 (1946) ("APA").

[5] "NMFS" refers to the National Marine Fisheries Service.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01

Shell apparently thinks that, because the payoff on its investment depends in part on the validity of NMFS's action, it is exempt from the rules of jurisdiction and justiciability. But neither Shell nor this Court may invent rules to accommodate Shell's circumstances.

Federal law contains no mechanism for Shell to obtain the relief it seeks. Shell tries to obscure this fact by styling its suit as a request for relief under the Declaratory Judgment Act. But the DJA neither creates federal jurisdiction nor provides a federal cause of action. Shell is attempting to use the DJA to obtain judicial review of agency action outside the boundaries of the APA. This end-run around the circumscribed process that Congress has provided must fail for four reasons:

*First*, this Court does not have subject-matter jurisdiction because Shell's complaint does not present a case or controversy. The federal courts do not have the power to adjudicate every question that a litigant might want answered. Rather, the federal courts can resolve only disputes that concern the legal relations between, or the duties among, adverse parties. Shell does not allege that it and the Organizations owe any legal duties to one another regarding the validity of a federal agency's decisions to issue incidental harassment authorizations[6] and, in fact, no such duties exist.

*Second*, Shell fails to state a cause of action. No cause of action exists that permits a private party to sue another private party to affirm agency action. This suit is a transparent attempt to evade the legal restrictions on review of agency action.

*Third*, Shell's attempt to invoke the DJA based on the Organizations' exercise of fundamental First Amendment rights violates the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine prohibits a plaintiff from bringing suit based on a defendant's exercise of its First Amendment right to petition the government. But Shell's suit is based entirely upon the Organizations' efforts to petition the government and express their views on the controversial

---

[6] "IHAs"

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01

subject of Arctic drilling. This Court must not permit a plaintiff to use the DJA to burden or discourage legitimate, constitutionally protected efforts to influence government policy.

*Fourth*, even if this Court did have jurisdiction, it should decline Shell's invitation to create a new judicial vehicle by which private parties could litigate potential disagreements over the validity of federal agency action. Allowing Shell's suit to proceed would set a dangerous precedent and open the courts to a flood of litigants seeking anticipatory validation of agency action. Shell's use of its novel tactic three times within three months only illustrates how the courts' workload would increase if such suits were permitted.

This Court should rebuff Shell's attempt to co-opt the federal courts to serve its practical interests. Federal courts that have been presented with similar abuses of the DJA have dismissed the plaintiffs' claims. This Court should do the same.

## I. Background

### A. Congress created a procedure for judicial review of agency action, and this suit falls outside of it.

Congress enacted the Administrative Procedure Act to waive sovereign immunity so that aggrieved parties may request judicial review of executive agency action, and to set forth standards and procedures for such review. *See Spencer Enters., Inc. v. United States*, 345 F.3d 683, 696 n.3 (9th Cir. 2003). But the APA provides several significant limitations on judicial review of agency action. It limits who may sue to obtain judicial review, it limits the scope of the record on review, and it limits the reasons that a court may set aside agency action.

1. **Standing**. Only a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. A plaintiff must meet this criterion to invoke judicial review of an agency decision. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990). A person who benefits from agency action cannot seek judicial review to affirm that action or to immunize it from potential challenge because an APA plaintiff must establish that he is "injured in fact by agency action" in order to bring a claim. *See Dir., Office of Workers' Comp. Programs*

3

664173.01

*v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 127 (1995). This rule avoids unnecessary scrutiny of agency action, thereby promoting the separation of powers and judicial economy.

2. **Scope of record and review**. A court generally must review agency action based on the administrative record that the agency prepares and provides. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). That record consists of "everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species*, 984 F.2d 1534, 1548 (9th Cir. 1993). The reviewing court scrutinizes the agency's record to determine whether the agency's record supports the challenged action. The APA directs a reviewing court to set aside any agency action that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. In most cases, if a court determines that agency action violated the APA, it will set aside the action and remand to the agency for further action not inconsistent with the court's decision. *See Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1053 & n.7 (9th Cir. 2010).

Shell asks this Court to review NMFS's actions under the APA standards. The substantive statutes to which Shell cites, the Marine Mammal Protection Act[7] and National Environmental Policy Act[8] do not expressly provide for judicial review, and claims alleging that an agency failed to comply with the MMPA or NEPA are therefore governed by the judicial review provisions of the APA. *Id.* at 1047. Accordingly, Shell's request for a declaration (i) that the procedures NMFS employed in issuing IHAs comply with the APA, MMPA, and NEPA; and (ii) that NMFS's decisions to issue the IHAs "[are] not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law," Am. Compl. ¶ 91,[9] are plainly a request for judicial

---

[7] 16 U.S.C. § 1361 *et seq.* ("MMPA").

[8] 42 U.S.C. § 4321 *et seq.* ("NEPA").

[9] Plaintiffs' Amended Complaint (Dkt. # 7).

4

664173.01

review under the APA. But Shell's suit looks nothing like an APA case: it is not filed against the agency that rendered the decisions at issue; it is not brought by a party aggrieved by agency action; and, at least unless NMFS were also brought into court, it would not be based upon an agency-prepared record.

### B. Shell sued the Organizations to preempt potential claims that the Organizations could, in due course, bring against NMFS.[10]

The U.S. government previously awarded Shell leases to drill for oil in the Chukchi and Beaufort Seas of the Arctic Ocean. Shell hopes to begin drilling in those areas this summer. To drill exploratory wells, Shell must obtain permits and authorizations. Am. Compl. ¶ 6. One such authorization is federal agency authorization to "take" marine mammal species. *Id.* ¶ 35-36. The MMPA prohibits the taking of marine mammals by, among other things, harassment. *Id.* ¶ 35. Upon a proper request, however, the responsible agency (in this case NMFS), may issue an IHA upon a citizen's request if the proposed harassment satisfies strict standards. *Id.* ¶ 36 & n.3.

Because Shell's planned exploratory drilling activities would entail harassment of marine mammals, Shell was forced to apply to NMFS for IHAs. *See id.* ¶¶ 46, 51. Shell submitted its application for Beaufort Sea activities on September 2, 2011, and for Chukchi Sea activities on September 12, 2011. On November 7 and 9, 2011, NMFS published analyses of the proposed IHAs. *Id.* ¶¶ 48, 53. The Organizations, among others, submitted comments within the 30-day comment periods. *Id.* ¶¶ 50, 56. On February 27, 2012, NMFS published its draft environmental assessments for the IHAs. *Id.* ¶ 56. The Organizations, among others, again submitted comments within the 30-day comment period. *Id.* ¶ 57. On May 1, 2012, NMFS issued a final environmental assessment. *Id.* ¶ 58. On May 2, 2012, NMFS issued IHAs for Shell's Chukchi and Beaufort Sea activities. *Id.* ¶¶ 60, 63.

---

[10] For purposes of this Motion to Dismiss, the Organizations apply the facts as alleged in Shell's Amended Complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007). The Organizations do not concede that Shell's assertions are accurate.

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01

The next day, Shell filed this complaint seeking to preempt any challenge by the Organizations to NMFS's conclusions. Thus, before attempting to force adjudication of any possible challenges that the Organizations might bring to the IHAs, Shell allowed the Organizations less than two days to review the final environmental assessments and IHAs and to request, obtain, and review the agency record.

Of those who submitted public comments, Shell chose to sue the 14 Organizations listed in this complaint. Shell alleges that the organizations are likely to make a legal challenge to NMFS's decisions because they have, individually and in various combinations, previously sought judicial review of governmental action that impacts the Arctic environment and resources. Specifically, Shell bases this lawsuit on its complaints that the 14 named Organizations (or some of them) have previously exercised their right to seek judicial review of approvals relating to Shell's drilling activities, as well as its other oil-drilling-related efforts in the Arctic, and that the Organizations (or some of them) have made public statements expressing their general opposition to Arctic drilling. *Id.* ¶¶ 70-94.

Shell asserts that it needs an immediate affirmation of NMFS's actions because an Organization could wait until closer to July, when Shell hopes to begin exploratory drilling activities, to request review. Shell asserts that it cannot operate under the uncertainty created by the Organizations' right to bring challenges to agency approvals within the statute of limitations. Nonetheless, Shell continues to mobilize resources to begin drilling without waiting for a ruling on NMFS's approval—or any other approval—from this Court. In fact, Shell has made no effort to move forward on the merits of any of its pending declaratory-judgment suits against the Organizations.

## II. Legal Standard for a Motion to Dismiss

A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if it lacks subject-matter jurisdiction. Where, as here, a movant mounts a facial attack on the plaintiffs' subject-matter jurisdiction allegations, the factual allegations in the complaint are

6

664173.01

presumed to be true.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  But the Court need not accept as true conclusory allegations or conclusions of law.  *Id.*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted if, even accepting the plaintiff's factual allegations as true, the allegations are insufficient to state a claim for relief.  *Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).  Where, as here, the plaintiffs' claim involves the defendants' rights to petition the government, courts apply a "heightened pleading standard."  *Id.*  Specifically, a plaintiff must include allegations of the specific activities that bring the defendants' conduct into one of the exceptions to the principle that First Amendment petitioning activity cannot form the basis of a lawsuit.  *Id.*  "This heightened level of protection accorded petitioning activity is necessary to avoid a chilling effect on the exercise of this fundamental First Amendment right."  *Id.* (internal quotations omitted).

## III.     This Court Must Dismiss Shell's Complaint

### A.     Shell's attempt to use the DJA to obtain a ruling on a non-party's potential liability violates the case-or-controversy requirement.

This Court should dismiss Shell's complaint for lack of jurisdiction.  Through DJA gymnastics, Shell has tried to foist upon this Court an inchoate dispute between other entities.  Shell's suit is, at its core, an attempt to obtain an advisory opinion about the outcome of hypothetical litigation between an Organization and NMFS.  This abuse of the DJA does not present a case or controversy for two reasons.

*First*, Shell's suit does not present a case or controversy because it does not concern the liability among parties before this Court.  Shell has no legal responsibility for the validity of the IHAs;  rather, NMFS—a non-party federal agency—has that responsibility.  Federal law does not allow a party to employ the DJA to concoct a cause of action or obtain an advisory opinion regarding a third party's liability.

*Second*, this dispute is not ripe for adjudication.  Even if Shell could obtain an opinion on the questions that would be raised in a suit between an Organization and NMFS (which it cannot),

7

664173.01

those potential issues have not been and cannot be identified at this time.  Unlike the typical declaratory-judgment plaintiff that brings a suit in the face of particular legal threats against it, Shell seeks a broad advisory opinion immunizing NMFS's decision against any conceivable challenge under three federal statutes.  Shell thus asks this Court to consider and rule upon questions that might never be raised.

The federal courts are courts of limited jurisdiction.  The party invoking federal jurisdiction must affirmatively establish it.  *See Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1190 (9th Cir. 1970).  A court must have jurisdiction *at the time the complaint is filed* and at all times thereafter.  *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).  This jurisdiction is limited to Article III cases or controversies.  *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239 (1937).  The prohibition on advisory opinions, the requirement of standing, and the doctrines of ripeness and mootness are all part of the case-or-controversy inquiry and are designed to ensure that federal courts do not exceed their jurisdiction.

> **1.      Shell's attempt to use the DJA to force this Court to predict NMFS's liability to the Organizations contravenes the requirement that parties be legally adverse.**
>
> **a.      This suit does not concern the legal relations or duties between Shell and the Organizations.**

A federal court cannot adjudicate every dispute that a litigant might wish it to resolve.  The case-or-controversy requirement limits the federal courts' jurisdiction to "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Paradigmatically, such cases involve one party accusing another of violating a legal duty owed to it.  *See* Richard H. Fallon, et al., Hart & Wechsler's The Federal Courts & Federal System 78 (4th ed. 1996).  Thus, the Supreme Court has described a justiciable case or controversy as one that is "definite and concrete, touching the *legal relations* of parties having adverse *legal* interests." *Aetna*, 300 U.S. at 240-41 (emphasis added).

8

664173.01

The DJA does not enlarge, nor provide an independent basis for, subject-matter jurisdiction; rather, it creates a remedy that the federal courts may choose to award in a case where federal jurisdiction otherwise exists. *See id.* at 239-40; *see also Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Co*., 642 F.3d 849, 853 (9th Cir. 2011) (recognizing that "while the DJA expanded the scope of the federal courts' remedial powers, it did nothing to alter the courts' jurisdiction, or the 'right of entrance to federal courts'" (internal citations omitted)). The DJA allows a court to "declare the rights and other legal relations of any interested party seeking such declaration" in "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201.[11] The DJA does not alter the requirement that a complaint must present a case or controversy involving the parties' adverse legal interests or legal duties to one another. The availability of declaratory relief "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Thus, in order to present a case or controversy, a declaratory-judgment plaintiff's complaint "must relate to an actual claim . . . that another asserts against him." *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 172 (5th Cir. 1990); *see also Mylan Pharm., Inc. v. Thompson*, 268 F.3d 1323, 1330 (Fed. Cir. 2001) (requiring a declaratory-judgment plaintiff's legal interest to "relate to an actual claim . . . which another asserts against him").

Here, Shell's complaint does not present a case or controversy because Shell does not ask this Court to determine the legal rights or duties between itself and the parties it has named as defendants. The fact that Shell and the Organizations have adverse practical interests, or that they may have differing opinions of the legality of the IHAs, does not transform their disagreement into a case or controversy. "[F]ederal jurisdiction may not be invoked simply because two litigants have differing views of the law." *Westlands Water Distrib. Dist. v. Natural Res. Def. Council*, 276 F. Supp. 2d 1046, 1050 (E.D. Cal. 2003).

---

[11] The DJA's "case of actual controversy" requirement is identical to Article III's case-or-controversy requirement. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

9

664173.01

Although the DJA does not alter the fundamental case-or-controversy requirement, the declaratory-judgment mechanism often complicates the jurisdictional inquiry because it allows a putative defendant to seek adjudication of rights or duties vis-à-vis a putative plaintiff, rather than the reverse. To clarify the jurisdictional inquiry in a declaratory-judgment action, courts often reverse the position of the parties and consider whether the "declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights." *Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986). Applying that test reveals why Shell's request for a declaratory judgment fails: Shell seeks to preempt a coercive action that the defendants could bring against a third party, not one that they would bring against Shell. In a proper declaratory-judgment action, by contrast, the plaintiff seeks to accelerate or force adjudication of a claim that the defendant threatens to assert against the plaintiff itself.

If the Organizations were to bring the coercive action that Shell anticipates—a claim that NMFS's decisions to issue to IHAs are arbitrary and capricious or that the procedures that NMFS used do not comply with the APA, MMPA, and NEPA, *cf.* Am. Compl. ¶ 91—that coercive action would be a suit against NMFS.[12] *Cf. Kousar v. Mueller*, 549 F. Supp. 2d 1194, 1198 (N.D. Cal. 2008) (dismissing defendants other than the agency responsible for the decision at issue). The Organizations could not bring an APA claim against Shell, and Shell does not identify any other basis upon which the Organizations could sue Shell regarding the propriety of NMFS's decisions.

Shell seeks, in essence, an advisory opinion on a third party's (NMFS's) potential liability. No litigant may obtain such relief from a federal court, whether couched as a declaration of rights or otherwise. The DJA "does not allow a stranger to intended litigation to use a declaratory judgment action as a vehicle to create a cause of action for which it has no legal

---

[12] Shell does *not* seek a declaratory judgment relating to its own actions. Shell does not, for example, seek a declaration that *it* is in compliance with the MMPA or NEPA. Shell seeks to affirm only the validity of the agency's approval.

10

664173.01

liability." *HAVEN*, 915 F.2d at 172. Shell's practical interest in the outcome of a suit brought by the Organizations and against NMFS does not give it the right to ask the court to adjudicate a hypothetical claim for which it is not legally liable. No precedent authorizes a court to entertain a declaratory-judgment plaintiff's attempt to preemptively validate an agency's decision by filing suit against parties that might challenge that decision in the future. Indeed, two federal courts have concluded that federal courts lack jurisdiction under circumstances analogous to those presented here.

In *Plum Creek Timber Company v. Trout Unlimited*, 255 F. Supp. 2d 1159 (D. Id. 2003), the Plum Creek Timber Company filed a declaratory-judgment action against Trout Unlimited, Pacific Rivers Council, and two federal agencies. The lawsuit was premised on the fact that Trout Unlimited and Pacific Rivers had sent a notice of intent to file suit against the two agencies and to challenge the agencies' approval of Plum Creek's native-fish habitat-conservation plan. Plum Creek sought a declaratory judgment affirming the agencies' approval of the conservation plan, arguing that it was entitled to such relief in light of the large amounts of money it had expended in implementing the plan and the risk and uncertainty that the notice of intent to sue created. *Id.* at 1161. The *Plum Creek* court concluded that it did not have jurisdiction over Plum Creek's declaratory-relief action because defendants' notices of intent to sue were directed toward the agencies, not Plum Creek. *Id.* at 1166. Although Plum Creek may have had a significant interest in any litigation between Trout Unlimited and Pacific Rivers and the agencies, the absence of any threat of litigation against Plum Creek meant that the court did not have jurisdiction to issue the ruling that Plum Creek requested.[13] *Id.*

Similarly, in *HAVEN,* Collin County filed a declaratory-judgment action against HAVEN, a group opposed to a planned highway, "seeking to forestall any potential litigation by HAVEN

---

[13] The court also determined that it did not have jurisdiction over Plum Creek's declaratory-judgment claim against the agencies because there was no controversy between Plum Creek and the agencies. 255 F. Supp. 2d at 1166. Similarly, there would be no controversy between Shell and NMFS under the circumstances presented here.

11

664173.01

or [ ] other citizen groups that might delay the completion of [the highway]." 915 F.2d at 169. Collin County sought a declaration that the related environmental impact statement prepared by federal agencies was sufficient as a matter of law. *Id*. The Fifth Circuit held that the district court lacked jurisdiction over this lawsuit because HAVEN could not have sued Collin County over the impact statement's sufficiency. *Id.* at 171-72. As that court recognized, although Collin County had an interest in the completion of the highway, it had no potential *legal liability* for any deficiency in the environmental impact statement. *Id.* at 171. Therefore, the Fifth Circuit concluded that the parties did not have adverse legal interests and that the district court should have dismissed the case. *Id.* at 171-72.

The caselaw is clear that Shell cannot use the DJA to obtain an advisory opinion regarding the Organizations' hypothetical dispute with NMFS. Like the *Plum Creek* and *HAVEN* plaintiffs, Shell does not allege that it fears legal liability to the Organizations. The Organizations have not threatened to sue Shell and, indeed, under the APA, could not state a claim against Shell. The Court cannot entertain Shell's attempt to force adjudication of a hypothetical claim between the Organizations and NMFS. The fact that the question to which Shell seeks an answer concerns the legal relations between the Organizations (or another party) and NMFS invalidates Shell's attempt to invoke jurisdiction.

### b.     Shell's practical interests do not give rise to a case or controversy.

Shell attempts to sidestep the lack of legal adversity by focusing on the practical harm that it could suffer if the Organizations, or some of them, or someone else, ultimately sued NMFS to challenge the IHAs. This is a mere distraction. The possibility that Shell might be adversely affected by the outcome of a suit between the Organizations and NMFS does not transform Shell's relationship with the Organizations into a justiciable case or controversy.

The fact that Shell might be able to intervene in a potential action by an Organization against NMFS at a future date does not create jurisdiction in this case. Shell, or any other entity

12

664173.01

with an interest in Shell's drilling activities, cannot invent a cause of action to affirm to NMFS's approval merely because invalidation of that approval could affect them. The *HAVEN* and *Plum Creek* courts rejected similar attempts to fabricate a case or controversy. In *HAVEN*, the Fifth Circuit acknowledged that the plaintiffs had an interest in the highway's completion and that they could be adversely affected by potential litigation that might delay or prevent construction, but held that jurisdiction was lacking nonetheless. *See HAVEN*, 915 F.2d at 171. Similarly, the *Plum Creek* court ruled that the threat to the plaintiff's economic interest in the disputed conservation plan did not create a case or controversy because Plum Creek itself did not face a threat of litigation over the conservation plan. *Plum Creek*, 255 F. Supp. 2d at 1165.

A ruling allowing preemptive suits by anyone with an interest in any agency action, like the suit that Shell seeks to bring here, would represent an extraordinary expansion of the federal courts' jurisdiction. Shell is no different from countless parties that would like to know whether the courts will uphold government action before they spend money. But the federal courts do not exist merely to serve Shell's desire to eliminate the risks associated with its investments.

### c. Joining NMFS would not cure the jurisdictional defect.

Shell's attempt to make an end-run around the APA process would fare no better if Shell tried to add NMFS as a defendant. Jurisdiction must exist at the time the complaint is filed. *Preiser*, 422 U.S.at 401. The subsequent joinder of a party cannot retroactively create jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992) (rejecting the contention that Fed. R. Civ. P. 19, which governs joinder of indispensable parties, "somehow alters [the] longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed") (plurality opinion). Moreover, Shell could not amend its complaint to name NMFS as a defendant, because Shell has no dispute with NMFS, the agency that *issued* Shell's IHAs. *See Plum Creek*, 255 F. Supp. 2d at 1166 (determining that there was no jurisdiction over Plum Creek's claim against the agency because Plum Creek sought to *affirm* the agency action

664173.01

and, therefore, the defendant's case did not present the requisite adversity). Shell cannot manufacture a way around the APA process.

### 2. Shell's attempt to rush the proper process violates the ripeness doctrine.

This Court also lacks jurisdiction over Shell's lawsuit because it is not ripe for adjudication. The ripeness requirement "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).[14] To guard against rendering advisory opinions, a federal court must not adjudicate claims that involve "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (internal quotation omitted).

As explained above, Shell's declaratory-relief action attempts to obtain an advisory opinion with respect to a possible future lawsuit between one or more of the Organizations and NMFS. *See* Am. Compl. ¶ 11. This contingent future event may never occur. Further, it might not occur as Shell anticipates. Neither Shell nor this Court can divine what a particular future challenge might look like, including who might bring such a challenge (whether the hypothetical plaintiff would be an Organization or not) and what particular deficiencies a challenger might identify. None of the statements that Shell identifies in its complaint as the premise for its lawsuit (*see id.* ¶¶ 74-85) identifies an Organization's specific legal disagreement with the agency's process or issuance of the IHAs. In fact, Shell has not referenced a single statement made by an Organization that relates specifically to the agency action it seeks to affirm. The one statement

---

[14] The ripeness doctrine derives from Article III limits on judicial power and from prudential reasons for refusing to exercise jurisdiction. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). The constitutional aspect of the ripeness inquiry ensures that the issues presented are "definite and concrete, not hypothetical or abstract," and that there is a true case or controversy. *Id.* at 1139.

14

664173.01

that Shell identifies as "a specific statutory and regulatory objection[ ] that can be rectified only through litigation," *id.* ¶ 80, was made in August 2011, *before Shell even applied for the IHAs at issue in this case*. *Id.* ¶ 77 & n.7.

Moreover, even if an Organization had identified any specific deficiencies in the IHAs or the agency's process before Shell filed this suit, such deficiencies would not necessarily serve as the basis for a legal challenge to NMFS's decisions. Litigants often pick and choose among possible claims when presenting their case to a court, and federal courts have no warrant to decide claims that these litigants choose not to raise. Indeed, it is also impossible for Shell or this Court to know what rationales NMFS might offer in defense of its actions, if any such challenge were filed.

Even if future litigation were inevitable, Shell's haste to file could force this Court to consider issues unnecessarily. Shell brought this lawsuit just one day after NMFS issued the IHAs in question. One day is insufficient for any entity to review such an approval and determine what legal challenges, if any, are appropriate. Further, Shell brought this suit well before any potential claimant would have time to request, obtain, and review the agency record and determine what claims to bring. To avoid forfeiting claims, an Organization could feel the need to raise every conceivable challenge to NMFS's actions as a defense to Shell's complaint, even though the Organization has not had a chance to decide whether such a challenge has merit.[15] *Cf. Columbus Cmty. Cable Access v. Luken*, 923 F. Supp. 1026, 1031 (S.D. Ohio 1996) (recognizing that it would be inequitable to "allow plaintiffs to use the declaratory judgment mechanism in an attempt to gain some tactical advantages or to force defendant to litigate a dispute which he feels is not ripe for resolution"). Thus, Shell's race to the courthouse makes it likely that this Court

[15] The alternative would be for the Organization to forfeit potentially legitimate arguments that an agency's action was contrary to law. This would deprive the public of one of the most basic checks on executive agency power and would diminish the judicial branch's role in determining the legality of agency action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01

would unnecessarily resolve legal questions, which is what the ripeness requirement is designed to prevent.

A case is not ripe for adjudication if the disagreement has not crystallized "so that a court can see what legal issues it is deciding." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952). Shell's complaint does not identify the particular issues that this Court must resolve. Rather, Shell asks for a blanket declaratory judgment that NMFS's actions are valid under three statutes precisely because the specific nature of any future, hypothetical challenge is not apparent. To issue the broad declaration Shell seeks, this Court—working without the benefit of an administrative record—would have to satisfy itself that all conceivable challenges had been considered, regardless of what issues the Organizations might raise or identify in this case. Shell has asked this Court to declare that NMFS's decisions and processes complied with the APA, MMPA, and NEPA in all respects. This would be an impossible task and a staggering imposition on judicial resources. *See Plum Creek*, 255 F. Supp. 2d at 1168 (noting the lack of certainty "as to what claims or issues would be contestable" and concluding that an expansive review of federal law would be "an impossible task for the Court and an inefficient use of judicial resources"). Shell does not ask this Court to resolve concrete and crystallized legal questions. Rather, it wants to preclude any legal challenge to its drilling activities, regardless of jurisdiction, process, and judicial resources.

**B.      Shell's attempt to affirm agency action is not based on a cognizable claim.**

Even if this Court had jurisdiction to adjudicate this matter (which it does not), Shell's complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. As discussed above, the DJA does not change the fundamental requirement that a complaint must present cognizable claims. Shell's complaint presents none. A party cannot sue another private party over the validity of agency action, nor can a party sue to affirm agency action.

664173.01

The legal basis of Shell's complaint is apparently the APA. Shell seeks a declaration that NMFS's decision to issue the IHAs "is not arbitrary, capricious, an abuse of discretion, or otherwise in violation of law" and that the procedures NMFS used comply with the APA, MMPA, and NEPA. Am. Compl. ¶ 91. But Congress has limited the circumstances under which a party may seek such judicial review of agency action. Shell's complaint does not meet those requirements in two, equally dispositive respects.

*First*, the APA provides a cause of action only against the federal government, and does not provide a right of action that allows one private party to sue another. *See* 5 U.S.C. § 702; *see also Window Sys., Inc. v. Manchester Mem. Hosp.*, 424 F. Supp. 331, 336 (D. Conn. 1976) ("[T]he APA is not applicable to suits between private parties."). But Shell has not sued the agency and has, instead, sued private parties. Shell, therefore, cannot state a claim against the Organizations under the APA. Reversing the parties' positions does nothing to improve Shell's complaint, because the Organizations could not state a claim against Shell under the APA in a coercive action.

*Second*, the APA provides a cause of action only for a party that has been aggrieved by agency action. 5 U.S.C. § 702. A party that is not aggrieved by agency action cannot state a claim under the APA. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 873. Here, Shell was not aggrieved by NMFS's decision to issue the IHAs Shell requested. In fact, Shell seeks to affirm that action. *See* Am. Compl. ¶ 1. Shell cannot, therefore, seek judicial review of NMFS's decisions under the APA. And because Shell's claim against the Organizations is not cognizable under the APA, Shell's lawsuit must be dismissed for failure to state a claim.

Congress had good reasons to limit APA claims to parties aggrieved by agency action. If a party who benefitted from agency action could sue to affirm it, the courts would be inundated with lawsuits seeking nothing more than to validate agency action already taken. Shell's multiple attempts to affirm agency action relating to just one narrow issue foreshadows the deluge with which courts would be faced this gambit were allowed. Further, such suits would force the courts

17

664173.01

to independently divine and consider all potential bases for invalidating the agency's action. Challenges to agency decisions are best presented in a true adversarial context, where the issues are defined by the party seeking review.

The requirement that an APA claim be brought against the responsible agency, rather than against a private party with an interest in the agency's action, also exists for good reason. Indeed, it is unclear how this Court should go about determining whether NMFS's decisions were valid without NMFS. Who will prepare the administrative record? How would disputes over the content of the record be resolved? What would the preclusive effect of any declaration be on parties not before the Court, including the agency and other possible challengers to NMFS's decisions? These questions show that a declaratory-judgment action between private parties is not the way to determine the legality of agency action.

Shell's invocation of the DJA does not excuse it from having to base its complaint on a cognizable claim for relief. Shell's APA claims are improper.

### C. Shell cannot bring a DJA suit based on the Organizations' constitutionally protected petitioning activity.

Shell asserts standing to seek declaratory relief based on various statements and petitioning activity that, according to Shell, show that the Organizations intend to seek judicial review of NMFS's decisions. In other words, Shell's DJA suit is premised entirely on the Organizations' First Amendment petitioning activities. This Court cannot interpret the DJA to allow one party to sue another based solely on what amounts to a public policy disagreement or, more specifically, based on a defendant's exercise of its First Amendment right to petition the government. The *Noerr-Pennington* doctrine prohibits such an expansive interpretation of the DJA and, therefore, Shell's lawsuit must be dismissed.

18

664173.01

**1.** **Under the *Noerr-Pennington* doctrine, this Court cannot interpret the DJA to allow claims based solely on protected petitioning activity.**

The *Noerr-Pennington* doctrine is a specific application of the rule of statutory construction known as the canon of constitutional avoidance. The doctrine requires courts to interpret statutes to avoid "burdening conduct that implicates the protections afforded by the Petition Clause" of the First Amendment. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931 & n.5 (9th Cir. 2006). It arose from the Supreme Court's recognition that the First Amendment right to "petition the Government for redress of grievances" is among "the most precious of the liberties safeguarded by the Bill of Rights." *BE&K Constr. Co. v. Nat'l Labor Relations Bd.*, 536 U.S. 516, 524 (2002) (internal quotation marks and citations omitted). Lawsuits arising from such petitioning activity, like that which Shell now attempts to bring against the Organizations, burden that right because they chill communication between citizens and their government representatives. *See id.* at 525.

Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress cannot be sued over their petitioning conduct. *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)). As such, the doctrine "bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity." *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 956 (S.D. Cal. 1996). Under *Noerr-Pennington*, therefore, the Court must interpret the DJA to preclude lawsuits premised upon the Organizations' petitioning activity. *See Sosa*, 437 F.3d at 931 (noting that the *Noerr-Pennington* doctrine is "a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause.").

Consistent with this general rule, courts have applied the *Noerr-Pennington* principle to suits seeking only declaratory relief. *See Westlands*, 276 F. Supp. at 1054. In *Westlands*, the court concluded that the *Noerr-Pennington* doctrine barred a water-distribution district's

declaratory-judgment action based on an environmental group's public-comment letter regarding the district's proposed long-term water-service contract with the United States. *Id.* As in *Westlands*, this Court "must construe [the DJA] to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 931.

The *Noerr-Pennington* analysis has three components: the Court must determine whether the First Amendment protects the activity in question; the Court must determine whether the lawsuit burdens the defendants' petitioning activities; and the Court should attempt to construe the statute to avoid burdening the protected petitioning conduct. *Cf. id.* at 933.

### a. Shell's request for declaratory relief is premised on the Organizations' (and others') exercise of their right to petition the government.

To have standing to seek declaratory relief a plaintiff must, among other requirements, demonstrate an actual and imminent injury-in-fact and a "very significant possibility of future harm." *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996). Shell attempts to meet this requirement by alleging that the Organizations will file a legal challenge to NMFS's decisions. Am. Comp. ¶ 8. Shell premises its purported entitlement to seek declaratory relief on the Organizations' petitioning efforts relating to Arctic drilling. Through such efforts, the Organizations have requested, and at times demanded, that government officials recognize the grave environmental impacts that attach to Shell's efforts to drill for oil, and that those officials take action accordingly. Based only on this exercise of fundamental constitutional rights, Shell asserts standing to drag the Organizations into court and force them to defend against an improper suit. This is precisely what the *Noerr-Pennington* doctrine, and the First Amendment, forbids.

The *Noerr-Pennington* doctrine protects broad categories of First Amendment activity, including statements that are not directed exclusively at the government. It precludes lawsuits based on statements made to persuade governmental officials to adopt particular policies or "to perform their functions in a certain way." *Kottle v. NW Kidney Ctrs.*, 146 F.3d 1056, 1059 (9th

664173.01

Cir. 1998). The doctrine also precludes lawsuits based on protected communication to private parties because such statements "must be protected [by the *Noerr-Pennington* doctrine] to afford breathing space to the right of petition guaranteed by the First Amendment." *Sosa*, 437 F.3d 933, 932 (9th Cir. 2006) (holding that DirecTV's pre-suit demand letters to private parties were protected by *Noerr-Pennington*). In *Noerr* itself, the Supreme Court determined that liability could not be based on a public-relations campaign designed to influence legislation. *Id.* at 934 (citing *E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140-43 (1961)).

Shell's stated basis for bringing this lawsuit is the Organizations' opposition to, and public advocacy against, Arctic drilling.[16] Specifically, the statements that Shell identifies as justifying its request for declaratory relief are:

- Statements recognizing that it is possible to request judicial review of administrative agency action relating to Shell's proposed drilling activities through the public participation process provided for in the APA, e.g., "approvals can still be taken to court." Am. Compl. ¶¶ 75, 80.

- Statements prompted by, and in response to, Shell's decision to sue the Organizations in order to preempt their rightful legal challenges or silence public advocacy efforts, e.g., "we're fighting back." *Id*. ¶ 83.

- Prior petitions to the courts seeking judicial review of the legality of agency action, i.e., lawsuits against agencies. *Id*. ¶¶ 70-78, 80.

- Statements relating to agency approvals *not at issue in this case*, made as part of an effort to raise public awareness and influence government decisions on Arctic drilling, e.g., "one drilling ship is one too many." *Id*. ¶¶ 74, 77, 82.

- Statements *unrelated to any specific Shell proposal* that outline the dangers of Arctic drilling, made as part of an effort to raise public awareness and influence

---

[16] Each Organization has its own unique position on Shell's drilling plans and Arctic drilling generally.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01

government decisions, e.g., "there is no way to clean up an offshore oil spill in the Arctic." *Id.* ¶¶ 81.

- Statements directed to the President and the U.S. Government as part of an effort to influence national policy, e.g., a posting that "called on the President to 'delay Arctic Ocean drilling.'" *Id.* ¶¶ 80, 82.

- Public comments (or the fact that the Organizations commented at all) on NMFS's draft IHAs and environmental assessments, i.e., rightful public participation in the agency approval process. *Id.* ¶¶ 50, 55, 57.

Shell identifies no statement made by an Organization that relates specifically to the agency action Shell seeks to affirm.[17]  Instead, Shell generally alleges it faces imminent injury because the Organizations (i) participated in the process required by the APA for valid agency decision-making, (ii) made statements directed at the President regarding national policy, (iii) made statements directed at the public to raise awareness and influence government decision-making, and (iv) filed lawsuits seeking review of other agency decisions.  Through these petitioning efforts, the Organizations have expressed their views to Executive Branch officials and to the public at large on a crucial question—whether Shell can safely and lawfully drill in the Arctic.  The First Amendment and *Noerr-Pennington* immunity protects all of these activities.

### b. Shell's improper use of the DJA burdens protected petitioning activity.

The *Noerr-Pennington* doctrine is designed to "avoid a chilling effect on the exercise of [a] fundamental First Amendment right." *Or. Natural Res. Council v. Mohla*, 944 F.2d at 533 (internal quotations omitted).  Shell's suit, by its very nature, burdens and interferes with the Organizations' communication with, and petitioning of, Executive Branch officials.  An action seeking a declaratory judgment "force[s] a citizen who petitions the government to incur the

---

[17] Shell reproduces one statement made by Earthjustice, a non-party, which criticized NMFS's draft environmental assessment.  Am. Compl. ¶ 82 & n.12.

22

664173.01

expense of defending his position in court," and therefore has "precisely the sort of chilling effect on protected petitioning activity that the *Noerr-Pennington* doctrine is designed to prevent." *Westlands*, 276 F. Supp. 2d at 1054.

Moreover, the threat of being forced into court on the basis of public-advocacy efforts will inevitably chill statements of other public-minded citizens and organizations that otherwise might offer their views on the controversial subject of Arctic drilling or on other issues of public importance. *See generally BE&K Constr. Co.*, 536 U.S. at 530-36 (noting that the filing of a lawsuit may interfere with or deter the exercise of First Amendment rights because the lawsuit itself creates a burden that is separate from and additional to "whatever legal consequences" flow from the suit). Indeed, in a separate but related context, a Supreme Court Justice has observed that "[p]rivate lawsuits threaten to chill robust representation by encouraging [potential litigants] to avoid controversial issues or stances in order to protect themselves 'not only from the consequences of litigation's result but also from the burden of defending themselves.'" *Spallone v. United States*, 493 U.S. 265, 300 (1990) (Brennan, J. dissenting) (quoting *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 732 (1980)). The implications of permitting a suit predicated upon the type of public advocacy of which Shell complains reach far beyond this matter, and would expose myriad public-interest groups to the specter of federal lawsuits based upon their constitutionally protected efforts to influence the government and to raise public awareness.

The fact that Shell is not specifically requesting to enjoin or attach monetary damages to the petitioning activity itself does not alter the *Noerr-Pennington* analysis. Even though the Organizations' petitioning activity is not the direct focus of Shell's substantive claim, it is the primary activity upon which Shell bases its purported standing to bring a declaratory-judgment action. The suit itself, therefore, will inevitably threaten to affect the Organizations', and others', willingness to continue their petitioning activity if doing so exposes them to the possibility of defending against a declaratory-judgment action in federal court.

664173.01

### c. The Court should construe the DJA to preclude Shell's suit.

Because Shell's twist on the DJA would chill constitutionally protected petitioning activity, this Court must attempt to construe the statute to avoid that burden. In other words, this Court should determine whether it can reasonably interpret the DJA as not permitting suits grounded upon government-directed petitioning activity. In this case, such a construction is reasonable and comports with the decisions of other federal courts.

Courts have acknowledged that a declaratory-judgment plaintiff cannot assert DJA standing based solely on alleged threats of litigation directed at other parties. *See Shields v. Norton*, 289 F.3d 832, 835-36 (5th Cir. 2002) (holding that a plaintiff had no standing to maintain a DJA action under the Endangered Species Act based on the Sierra Club's notice of intent to sue a third party, rather than the plaintiff himself); *Plum Creek*, 255 F. Supp. 2d at 1166 (determining that Plum Creek had not been threatened with impending litigation where the statements of intent to sue did not indicate intent to sue Plum Creek itself).

Likewise, Shell should not be permitted to invoke the DJA based on the Organizations' alleged intent to sue the government, rather than to sue Shell itself. Shell bases its alleged imminent injury on activity directed towards the government, but these alleged threats are nothing more than the Organizations' exercise of their constitutional rights and their attempt to influence government decision-makers on a matter of undeniable public importance. This case, therefore, presents a compelling reason to interpret the DJA to preclude standing based solely on alleged imminent litigation against third parties.

Shell cannot rely on the Organizations' petitioning activity to gain entry into this Court, both because it runs afoul of the First Amendment and because the DJA does not allow it. Under *Noerr-Pennington*, therefore, Shell cannot state a claim for declaratory relief.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01

Case 3:12-cv-00096-RRB    Document 29    Filed 06/07/12    Page 30 of 34

**D. This Court should decline to exercise its discretion to entertain Shell's suit because Shell's abuse of the DJA would create a dangerous precedent allowing parties to sue to affirm agency action.**

Even if the Court had subject-matter jurisdiction to adjudicate Shell's lawsuit (which it does not), the Court should, as a matter of discretion, decline to entertain this request for declaratory relief. District courts may decline to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject-matter jurisdictional prerequisites. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Declaratory-judgment actions that would not settle all aspects of the controversy, or that are brought for the purpose of procedural fencing or of gaining a "res judicata advantage," are disfavored. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (internal quotation omitted).

As already discussed, the declaratory relief that Shell seeks asks the Court to predict each and every basis upon which NMFS's decisions could be challenged. This is an impossible task that the Court does not have jurisdiction to embark upon. But even if jurisdiction existed, the sheer scope of Shell's request is a reason to decline Shell's DJA suit. *See Plum Creek*, 255 F. Supp. 2d at 1168.

Moreover, this Court should reject Shell's attempt to make an end-run around the limitations on judicial review of agency action. In enacting the APA, Congress set forth the circumstances under which courts can review and render a decision on the validity of agency action. Shell's attempt to circumvent those limits and invent a new vehicle for judicial review of agency action is the sort of gamesmanship that counsels in favor of dismissing this suit.

Shell's maneuver, if indulged, would have serious ramifications for the federal courts' workload. Indeed, Shell alone has already filed three declaratory-judgment suits in this Court relating to its exploratory drilling activities. Under the logic of Shell's scheme, any entity that obtains a favorable decision from an administrative agency could race to the courthouse to affirm that decision and preempt future challenges. Other beneficiaries of agency action would quickly follow Shell's lead, and repeated consideration of those questions would eviscerate the

25

664173.01

jurisdictional and procedural requirements that Congress enacted through the APA. Needless litigation over hypothetical administrative challenges would flood the courts. The APA does not allow parties to bring suits seeking affirmance of agency action in part because a system that allowed such suits would be unworkable. Thus, even if the Court had jurisdiction to consider Shell's request for declaratory relief, and even if Shell had stated a valid claim for relief, the Court should exercise its discretion to dismiss this suit.

## IV.      Conclusion

Shell attempts to use the Declaratory Judgment Act to force this Court to resolve questions that no one has yet raised and that the Court lacks the power to address. Shell's short pre-drilling timeline does not afford it an exemption from the APA process.

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

The Organizations respectfully request that this Court dismiss Shell's amended complaint.

Dated: June 7, 2012                                    KEKER & VAN NEST LLP


                                                       */s/ Rachael E. Meny*
                                              By:      RACHAEL E. MENY
                                                       rmeny@kvn.com
                                                       JUSTINA SESSIONS
                                                       jsessions@kvn.com
                                                       SHILPI AGARWAL
                                                       sagarwal@kvn.com
                                                       633 Battery Street
                                                       San Francisco, CA  94111-1809
                                                       Telephone:      415-391-5400
                                                       Facsimile:      415-397-7188

                                                       Attorneys for Center For Biological Diversity,
                                                       Inc., REDOIL, Inc., Alaska Wilderness League,
                                                       Natural Resources Defense Council, Inc.,
                                                       Northern Alaska Environmental Center, Pacific
                                                       Environment And Resources Center, The
                                                       Wilderness Society, Ocean Conservancy, Inc.,
                                                       Oceana, Inc., Defenders Of Wildlife,
                                                       Greenpeace, Inc., National Audubon Society,
                                                       Inc., and World Wildlife Fund, Inc.

                                                       GEORGE E. HAYS
                                                       236 West Portal Ave. # 110
                                                       San Francisco, CA  94127
                                                       Telephone:      415-566-5414

                                                       Attorneys for Sierra Club

                                                       SEAVER & WAGNER, LLC
                                                       Timothy Seaver – ABA # 9711092
                                                       tseaver@seaverwagner.com
                                                       500 L Street, Suite 501
                                                       Anchorage, AK  99501
                                                       Telephone:      907-646-9033
                                                       Facsimile       907-258-7280

                                                       Attorneys for Defendants

27

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01

## CERTIFICATE OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On June 7, 2012, I served the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
(FED. R. CIV. P. 12(B)(1), 12(B)(6))**

I hereby certify that on June 7, 2012, a copy of foregoing was served electronically on the following:

Kyle W. Parker                                    LAW OFFICE OF GEORGE E. HAYS
David J. Mayberry                                 GEORGE E. HAYS *(pro hac vice pending)*
CROWELL & MORING LLP                              236 West Portal Ave. # 110
1029 W. 3rd Avenue, Suite 402                     San Francisco, CA 94127
Anchorage, AL 99501                               Tel: 415-566-5414
Tel:    907-865-2600
Fax:    907-865-2680
kparker@crowell.com
dmayberry@crowell.com


Executed on June 7, 2012, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.


     /s/ *Rachael E. Meny*
RACHAEL E. MENY

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
Case No. 3:12-cv-00096-RRB

664173.01